IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MICHAEL YESHIAMBEL,

    **Plaintiff,**

    v.

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES,

    **Defendant.**

Case No. 22-CV-1128-JAR-ADM

**MEMORANDUM AND ORDER**

Plaintiff Michael Yeshiambel seeks judicial review of the denial of his application for naturalization pursuant to 8 U.S.C. § 1421(c). This matter comes before the Court on the Motion for Summary Judgment filed by Defendant United States Citizenship and Immigration Services ("USCIS") (Doc. 45) as well as the Motion for Summary Judgment filed by Plaintiff (Doc. 46).[1] The matter is fully briefed, and the Court is prepared to rule. For the reasons explained below, the Court grants Plaintiff's motion and denies Defendant's motion.

**I.    Background**[2]

Plaintiff, a native and citizen of Ethiopia, is a lawful permanent resident of the United States after having been granted asylum on March 4, 2013. He lives and works in Wichita, Kansas. On May 9, 2021, Plaintiff filed an N-400, Application for Naturalization ("Application"). On January 25, 2022, the Defendant denied Plaintiff's Application, on the basis that he lacked the requisite good moral character in the five years preceding the filing of his

---

[1] Because both parties have filed summary judgment motions as well as responses and replies that address the same issues, the Court will not discuss the two motions separately. Instead, the Court will address each party's overall argument regarding each relevant issue.

[2] The facts are uncontroverted or stipulated to.

Application. The Defendant noted that Plaintiff had one conviction during the relevant period for driving unlawfully on a restricted license ("2019 Unlawful Act"), in violation of Section 3114-1142010A of the Code of Ordinances of the City of Wichita. The Defendant also cited charges outside the five-year statutory period including a driving under the influence ("DUI") charge from August 25, 2013. Plaintiff's license was restricted in 2019 due to the 2013 DUI charge.

Plaintiff timely filed a request for a hearing on the denial. In his request for a hearing, Plaintiff argued that dropped charges are not relevant when conducting a good moral character analysis, the DUI was not relevant because it was outside the five-year statutory period in 8 U.S.C. § 1427(a), and he successfully completed diversion. Plaintiff further argued that a single conviction for violating a driver's license restriction could not vitiate his overwhelming good moral character, and that no case has ever held that such a single, minor offense negates good moral character. Defendant denied his appeal.

On June 1, 2022, Plaintiff filed the instant lawsuit, seeking de novo review by this Court on the denial of his Application.

On August 29, 2022, Defendant filed a motion to dismiss that argued Plaintiff's complaint failed to state a claim upon which relief could be granted because Plaintiff was convicted of an unlawful act during the five-year lookback period. Further, Plaintiff failed to show extenuating circumstances pertaining to his culpability for the relevant crime pursuant to 8 C.F.R. § 316.10(b)(3).

In response, Plaintiff asserted the extenuating circumstances requirement is not applicable because the crime he committed during the five-year statutory lookback period is "not [an] adverse enough act to require 'extenuating circumstances' be shown."[3]

In a Memorandum and Order, the Court dismissed Plaintiff's Administrative Procedures Act ("APA") claim,[4] denied Defendant's Rule 12(c) motion as premature, and denied Defendant's Rule 12(b)(6) motion.[5]

## II.     Standard

### A.     Judicial Review Under 8 U.S.C. § 1421(c)

The naturalization process is governed by the Immigration and Nationality Act ("INA"),[6] and its corresponding regulations. The district court reviews the administrative decision to deny naturalization de novo and "shall make its own findings of fact and conclusions of law."[7] The district court is not limited to the administrative record in this context under this standard of review.[8] The Tenth Circuit has noted that "[t]his grant of authority is unusual in its scope [because] rarely does a district court review an agency decision de novo and make its own findings of fact."[9] The Federal Rules of Civil Procedure apply to naturalization proceedings.[10]

---

[3] Doc. 9 at 4.

[4] Plaintiff acknowledged that his APA claim could be dismissed under Fed. R. Civ. P. 12(b)(1). Doc. 9 at 2.

[5] Doc. 14.

[6] 8 U.S.C. § 1421(c)

[7] 8 U.S.C. § 1421(c).

[8] *See Aparicio v. Blakeway*, 302 F.3d 437, 445 (5th Cir. 2002) ("Judicial review of naturalization denials is always available and is de novo, and is not limited to any administrative record but rather may be on facts established in and found by the district court de novo.").

[9] *Nagahi v. INS*, 219 F.3d 1166, 1169 (10th Cir. 2000).

[10] Fed. R. Civ. P. 81(a)(3).

A naturalization applicant bears the burden of showing his eligibility and compliance with all naturalization requirements.[11] Any doubts about eligibility "should be resolved in favor of the United States and against the claimant."[12] The applicant bears the burden of proving, by a preponderance of the evidence, that he or she meets all of the requirements for naturalization and is eligible to become a citizen of the United States.[13] The requirement at issue in this case is that the applicant show he or she "has been and still is a person of good moral character" during the relevant time period.[14]

### B.  Summary Judgment

Claims seeking de novo review of naturalization decisions are routinely decided on summary judgment.[15]

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[16] In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[17] "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[18] A fact is "material" if, under

---

[11] *Berenyi v. Dist. Dir., INS*, 385 U.S. 630, 637 (1967); 8 C.F.R. § 316.2(b).

[12] *Berenyi*, 385 U.S. at 637 (quotation omitted).

[13] 8 C.F.R. § 316.2(b).

[14] 8 U.S.C. § 1427(a)(3).

[15] *See, e.g.*, *United States v. Hsu*, 695 F. App'x 393, 398 (10th Cir. 2017) (affirming the grant of the government's motion for summary judgment and revoking Hsu's naturalization; *Dar v. Olivares*, 956 F. Supp. 2d 1287, 1292 (N.D. Okla. 2013) (explaining "[f]ederal courts have concluded that the summary judgment process under Rule 56 is applicable to proceedings under 8 U.S.C. § 1421(c) for de novo district court review of denial of an application for naturalization.") (collecting cases).

[16] Fed. R. Civ. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008).

[17] *City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[18] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

the applicable substantive law, it is "essential to the proper disposition of the claim."[19]  An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."[20]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[21]  In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[22]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[23]  The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[24]  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[25]  The facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[26]

---

[19] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir. 1998)).

[20] *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).

[21] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[22] *Adams v. Am. Guar. & Liab. Ins. Co.,* 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

[23] *Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)).

[24] *Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[25] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671); *see Kannady*, 590 F.3d at 1169.

[26] *Adams*, 233 F.3d at 1246.

Finally, summary judgment is not a "disfavored procedural shortcut;" on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[27]

## III. Discussion

As a threshold issue, Defendant argues that its summary judgment motion should be granted because Plaintiff has not asserted extenuating circumstances relating to his 2019 Unlawful Act. Plaintiff contests that he needs to plead the existence of extenuating circumstances for his 2019 Unlawful Act, and maintains that he only seeks review of the threshold determination of whether the 2019 Unlawful Act reflects adversely upon his moral character.

Although not defined in the INA, 8 U.S.C. § 1101(f) provides various classes of persons who *per se* lack good moral character.[28] Defendant does not assert that Plaintiff falls into any of these enumerated classes. However, the INA also includes a catchall provision that allows for an adverse character finding.[29] As the Tenth Circuit has noted, "even if a person does not fit within one of the enumerated classes, that does 'not preclude a finding that for other reasons such person is or was not of good moral character.'"[30]

If a person does not fit within one of the enumerated classes, he or she must nevertheless be found, in the absence of "extenuating circumstances," to "lack good moral character if, during the statutory period," he or she "[c]ommitted unlawful acts that adversely reflect upon [his or

---

[27] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

[28] 8 U.S.C. § 1101(f) (ranging from "habitual drunkard[s]" to those that have "participat[ed] in genocide").

[29] *See id.*

[30] *United States v. Hsu*, 695 F. App'x 393, 396 (10th Cir. 2017) (quoting 8 U.S.C. § 1101(f)).

6

her] moral character, or [the applicant] was convicted or imprisoned for such acts."[31]  This determination is evaluated "on a case-by-case basis taking into account the . . . standards of the average citizen in the community of residence."[32]  And "[e]ven if the [applicant's] conduct does not qualify as a crime involving moral turpitude (CIMT), he may still be found to lack good moral character."[33]  The Defendant "may take into consideration, as a basis for its determination, the applicant's conduct and acts at any time prior to that period," if: (i) "the conduct of the applicant during the statutory period does not reflect that there has been reform of character from an earlier period"; or (ii) "the earlier conduct and acts appear relevant to a determination of the applicant's present moral character."[34]

Plaintiff's 2019 Unlawful Act does not preclude a finding of good moral character because driving with a suspended license is not among the enumerated bars to a finding of good moral character.  Rather, it is an "unlawful act" that must be evaluated by engaging in a case-specific analysis.[35]

Defendant contends that Plaintiff's 2019 Unlawful Act is one that reflects adversely upon his moral character.  Defendant argues that, because Plaintiff is foregoing the rebuttal showing of "extenuating circumstances," there should be no question that his willful violation of his suspended driving privileges is inconsistent with the standards of the average Kansas citizen and demonstrates a willful disregard for the law.

---

[31] 8 C.F.R. § 316.10(b)(3)(iii).

[32] *Id.* § 316.10(a)(2).

[33] *Hsu*, 695 F. App'x at 396 (citing 8 C.F.R. § 316.10(b)(3)(iii)).

[34] 8 C.F.R. § 316.10(a)(2).

[35] *See Haciosmanoglu v. Tritten*, No. 21-2584, 2022 WL 781047, at *2–3 (8th Cir. Mar. 15, 2022) (reversing the grant of government's motion to dismiss on the ground that the plaintiff failed to establish good moral character as required by 8 U.S.C. § 1427(a) because the district court did not engage in a case-specific analysis and instead treated the plaintiff's unlawful conduct as a bar to naturalization as a matter of law).

Additionally, Defendant points to Plaintiff's past disregard for motor vehicle laws based on events that occurred outside the statutory lookback period, as well as his history of ignoring judicial process. Defendant's motion notes that Plaintiff was involved in several vehicle-related incidents between 2009 and 2012, and also cites his conduct related to the DUI charge. Specifically, Defendant points out:

> In November 2013, [Plaintiff] entered into a diversion agreement covering the four charges in Case No. 13DU000843, under which he accepted responsibility for his conduct in driving under the influence, and prosecution of the case was deferred. An Assistant City Prosecutor later moved to terminate the pre-trial diversion agreement based on [Plaintiff's] failure to pay diversion fees and provide proof of his counseling pursuant to the terms of the diversion agreement. On July 29, 2014, the Court terminated the diversion agreement for the same. On February 22, 2016, the case was again set on diversion. In March of 2016, [Plaintiff] was found to have completed the terms of his diversion agreement, and the four charges against him were dismissed.
>
> However, [Plaintiff's] driving privileges were still restricted because of his DUI charges on August 25, 2013. . .[Plaintiff] admits that on July 2, 2019 he knowingly drove a vehicle that was not equipped with an ignition interlock system in violation of his restricted license status . . . On July 2, 2019, [Plaintiff] was in an automobile accident when another driver turned into his vehicle. [Plaintiff] was cited for driving on a restricted license (which was still restricted because of and since his 2013 DUI proceedings), as well as not having a valid license in his possession. On September 30, 2020, he pled no contest and was found guilty of Count 2, violating his drivers license restriction.

> Plaintiff's driving privileges were restored unrestricted on January 3, 2023. . . [Plaintiff failed] to appear in each of the following matters: (1) the April 20, 2009 charge for running a red light, (2) the November 20, 2010 charge for failure to use headlights, and (3) the February 19, 2012 seatbelt ticket. Regarding the April 20, 2009, red light matter, [Plaintiff's] longstanding failure to appear resulted in suspension of his license and later arrest. Indeed, even after entering into a diversion agreement for his driving under the influence and other charges, [Plaintiff's] failure to pay diversion fees and provide proof of his counseling pursuant to the terms of the diversion agreement resulted in the Court terminating the diversion agreement, although diversion was later reinstated. [Plaintiff's] conduct in the many instances he disregarded his summonses to appear outside the statutory lookback, to a point even that he was arrested, along with his disregard to comply with counseling requirements and obligation to pay fines, are demonstrative that [Plaintiff] had not reformed his character by the time of the lookback period and his conviction for violating the restriction of his driving privileges. . . .[36]

As previously noted, Plaintiff counters that his single unlawful act during the relevant five-year lookback period—violating a driver's license restriction—does not adversely reflect on his moral character and is not adverse enough to require a showing of extenuating circumstances. Additionally, Plaintiff asserts that individuals with convictions for DUI are regularly approved for naturalization.[37]  Further, Plaintiff contends, "[t]he good moral character analysis does not

---

[36] Doc. 45 at 6–7, 16–17.

[37] *See, e.g., Rangel v. Barrows*, No. 4:07-cv-279, 2008 WL 4441974, at *4 (E.D. Tex. Sept. 25, 2008) ("[In the absence of aggravating factors, a single DWI conviction is insufficient to deny an application for naturalization on the basis that the applicant lacks good moral character."); *Ragoonanan v. U.S. Citizenship & Immigr. Servs.*, No.

occur in a vacuum."[38]  Accordingly, Plaintiff cites facts indicating his positive moral character, including his gainful employment, impressive record as a student at Wichita State University, and his investment in the community.[39]

Plaintiff is correct that individuals with convictions for DUIs are regularly approved for naturalization.  Courts confronted with this issue have agreed that a single DWI or DUI conviction is insufficient to preclude a naturalization applicant from establishing good moral character.  For example, in *Ragoonanan v. United States Citizenship and Immigration Services*, the district court decided in favor of an individual whose citizenship application was denied due to a single DWI conviction.[40]  The *Ragoonanan* court granted petitioner's summary judgment motion, noting it could not locate a single case concluding that a single DWI conviction is enough to bar a finding of good moral character.[41]

Indeed, at least two courts have granted a petitioner's summary judgment motion despite the petitioner having *two* DWI convictions.[42]

---

07-3461, 2007 WL 4465208, at *5 (D. Minn. Dec. 18, 2007) (granting applicant's motion for summary judgment as the court found "no authority indicating that a single DWI conviction resulting in probation operates as a statutory or regulatory bar to a naturalization applicant who seeks to establish 'good moral character' "under the catch-all provision in 8 C.F.R. § 316.10(b)(3)(iii)).

[38] Doc. 47 at 6.

[39] Doc. 1 ¶¶ 30–32.

[40] 2007 WL 4465208 at *5.

[41] *Id.* at *3.

[42] *Cajiao v. Bureau of Citizenship & Immigr. Servs. of the Dep't of Homeland Sec.*, No. H-03-2582, 2004 U.S. Dist. LEXIS 29734 (S.D. Tex. Mar. 30, 2004); *see also Yaqub v. Gonzalez*, No. 1:05-cv-170, 2006 WL 1582440 (June 5, 2006) (concluding that two DWI convictions did not bar the applicant from establishing good moral character).

Notably, aggravating factors may affect this determination. For example, in *Nguyen v. Monica*, the naturalization applicant's citizenship request was denied not only because he was convicted of DWI, but because he also failed to disclose an arrest for making terroristic threats.[43] Other cases have denied the appeals of naturalization applicants who have been convicted of DWI or DUI based on other aggravating factors.[44]

Here, in addition to the motor vehicle related offences, Defendant cites Plaintiff's 2011 aggravated assault arrest.[45] Defendant points out that Plaintiff "was involved in a physical altercation involving alcohol that resulted in another individual sustaining injuries. He was in custody for around three weeks and was released when the prosecutor's office did not press charges against him regarding the incident."[46] Defendant does not provide any other information regarding the relevant circumstances; the Court cannot find the 2011 incident constitutes an aggravating factor.

While the Court does not in any way condone drunk driving, the on-point case law is clear. The Court finds that Plaintiff's DUI and other driving infractions, taken as a whole, do not demonstrate he lacks good moral character. Further, Defendant has failed to establish any aggravating factors or other evidence on which it can base a determination that Plaintiff lacks good moral character. Therefore, the Court finds there is no genuine issue of material fact as to

---

[43] *Nguyen v. Monica*, No. 05-3021, 2006 WL 2788211, at *2 (E.D. Pa. Sept. 26, 2006). The court stated in dictum that "a single conviction for driving under the influence would no doubt be insufficient to derail petitioner's naturalization application." *Id.*

[44] *Rico v. INS*, 262 F.Supp.2d 6 (E.D.N.Y.2003) (denial of a naturalization appeal based upon five DWI convictions, a third-degree attempted rape conviction, and a finding that the applicant's testimony lacked candor); see also *Le v. Elwood*, No. 02-cv-3368, 2003 WL 21250632, at *3 (E.D. Pa. Mar. 24, 2003) (stating that, although two DWI convictions "may not disqualify [the petitioner] from being a person of 'good moral character,'. . . other doubts were created by [the petitioner's testimony]").

[45] At some points in its opening brief, Defendant refers to a "2011 arrest for aggravated battery." Doc. 45 at 3, 5, 15. At a different point in the pleading, Defendant refers to the "aggravated assault matter." *Id.* at 16.

[46] Doc. 45 at 5.

whether Defendant improperly denied Plaintiff's Application for Naturalization.  Accordingly, the Court grants summary judgment in Plaintiff's favor.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion for Summary Judgment (Doc. 45) is **denied** and Plaintiff's Motion for Summary Judgment (Doc. 46) is **granted**.

**IT IS FURTHER ORDERED** that Plaintiff's Application for Naturalization is **approved**.  Plaintiff shall be sworn in as a citizen of the United States of America at the next regularly scheduled naturalization ceremony in Wichita, Kansas.

**IT IS SO ORDERED.**

Dated: May 8, 2024

                                         s/ Julie A. Robinson
                                        JULIE A. ROBINSON
                                        UNITED STATES DISTRICT JUDGE